EATON ET AL., APPELLANTS, v. THE LARIMER AND WELD RESERVOIR COMPANY, APPELLEE.

1. MEASURE OF DAMAGES.

Damages recoverable by a corporation in an action on an injunction bond are ordinarily limited to losses and injuries sustained by it by reason of the wrongful suing out of the writ.

2. SAME.

A corporation suing on an injunction bond running to it, cannot include in its claim for damages those which have incidentally fallen on its

stockholders, without proof that it has been compelled to respond for a breach of some valid contract into which it had antecedently entered, and which it was prevented from performing by the bond in suit, or a showing that it has rightfully liquidated the claims asserted against it.

3. APPELLATE PRACTICE.

When part of the recovery is erroneous and it cannot be definitely ascertained what part could be legitimately sustained, the judgment cannot be modified and permitted to stand, but must be reversed.

*Appeal from the District Court of Weld County.*

Mr. JAMES W. McCREERY, for appellants.

Mr. H. N. HAYNES, for appellee.

BISSELL, P. J., delivered the opinion of the court.

This action was brought to recover damages for the alleged breach of the conditions of a bond executed by the appellants under the terms of an order authorizing a writ of injunction to issue in a suit brought by Eaton and others against the Larimer and Weld Reservoir Company.

At the time of the inception of this controversy, The Larimer and Weld Canal Company owned and was operating a ditch for the distribution of water to the holders of water rights in a canal running through the counties of Larimer and Weld for a distance of some fifty miles. The Eatons were the owners of divers water rights in that ditch. Sometime in the year 1890, a corporation was organized under the statute to construct some reservoirs for the detention of water to be subsequently distributed. It does not appear from the record whether all of the stockholders in that new company were the owners of lands along the line of The Larimer and Weld Canal, or whether part of them were so situated, and the balance simply stockholders for profit. However this may be, The Larimer and Weld Reservoir Company having been organized, constructed one or more reservoirs according to the purposes of their organization. One of them was

called the Terry Lake Reservoir, from which in 1891, the Reservoir Company started the construction of an outlet ditch to connect the lake with the Larimer and Weld Ditch, through which the stored water was to be distributed to such of the stockholders as owned lands along the line of the Larimer and Weld Ditch below the outlet.    Before completing the outlet and turning the water in, the Reservoir Company started proceedings in the county court of Weld county to condemn the Larimer and Weld Ditch to the extent of permitting the Reservoir Company to distribute through its channel the stored waters in their lakes to the reservoir stockholders who were entitled thereto under their contracts with the Reservoir Company.    The regularity, legality and sufficiency of those proceedings in condemnation are not involved in the present suit.    It is enough to say that thereunder such proceedings were had as culminated in an order of the court permitting the Reservoir Company to take possession of the Larimer and Weld Ditch for the purposes described in their petition of condemnation on the deposit in court for the benefit of the Ditch Company of a specified sum of money. Thereupon the outlet into the ditch was cut, the reservoir waters turned into the canal, and the managers and directors of the Reservoir Company attempted to make their distribution a successful one to their stockholders by so regulating the head-gates of the laterals leading from the Larimer and Weld Ditch and belonging to the holders of water rights in this ditch other than stockholders in the reservoir company, that the waters distributed in this way should be available and beneficial only to these latter stockholders.    This naturally led to a controversy, and it would appear that the persons in charge of the reservoir interests attempted to protect their rights by a show at least of force, and it led to the bringing of a suit by Eaton, one of the appellants, and others, in the district court, to restrain the managers and directors of the Reservoir Company from in any wise interfering with the Larimer and Weld Ditch or using it for the purposes to which that company were endeavoring to acquire a right by

the condemnation proceedings. The writ was ordered to issue on the filing of a bond with a specified penalty and in the usual terms. The bond was filed and contained this condition : " In case said injunction shall issue, the said plaintiffs will pay to the defendants all costs and damage which shall be awarded against the complainant in case the said injunction shall be modified or dissolved in whole or in part."

Thereafter the Reservoir Company, which was the defendant in that suit, moved to dissolve the writ, and when the matter came on for hearing before one of the judges in the district court in Denver, the injunction was dissolved, and it was ordered by the judge that the action be dismissed without prejudice. So far as the present record discloses, that order was entered without objection, remains in full force and unmodified, and no steps have been taken to reverse it. This order was entered on the 15th of August 1891, and on the 24th of October of the same year this suit was brought against the signers of the bond, Benjamin H. and Aaron S. Eaton. The complaint was in the ordinary form—alleged the corporate capacity of the plaintiffs, the bringing of the injunction suit, the issuance of the writ, the giving of the bond, the dissolution, and stated the damages sustained, and prayed judgment.

The appellants discuss but two of the assigned errors in their brief; the one relates to the time of the bringing of the suit, and the other to the rule laid down by the trial court for the assessment of damages. We do not perceive that the first contention is properly presented for our consideration. Whether therefore an action can be brought upon an injunction bond containing the expressed condition of the one in suit, and can be successfully maintained prior to a final determination of the original action will be left unnoticed farther than to say, that according to the present record that case was dismissed by the order of the judge who dissolved the injunction, and the appellants in no manner during the trial of the present cause preserved the question relating to the right of the company to bring suit when they did. The

other question is not so readily disposed of, since it is fairly presented to the court for determination. During the progress of the trial, proof was offered which tended to show that the stockholders of the Reservoir Company had suffered large loss in the destruction and diminution of their crops for the want of water which they were unable to obtain because of the issuance of the writ against the Reservoir Company. While the objection to the testimony was very general, yet the court was directly requested to instruct the jury that the Reservoir Company could "recover no damages on account of any that may have been sustained by the individual stockholders." This the court refused to do, but it generally instructed the jury that they were entitled to take into consideration any damages sustained by the plaintiff and done to the crops because of the loss and non-receipt of the water. It is true that the instruction given in general terms charged the jury that it was the Company which was entitled to recover the damages resulting from the loss of crops, but that does not of itself remedy the difficulty or remove the error which the court committed in refusing to give the charge which the defendants requested.

Without attempting by the processes of inclusion and exclusion to give an absolutely accurate definition of a corporation, it may be termed an artificial person created by law, with many of the powers and responsibilities of the natural person, and with many which are peculiar to its own artificial existence. For the purpose of enforcing its obligations, determining its responsibilities, subjecting it to compulsory performance of its contracts, or requiring it to respond in damages for torts which have been committed in its name and by its authority, the law regards it as an entity wholly distinct and separate from its directory or its stockholders. The converse is equally true. Ordinarily it, and it only, may bring suit to enforce agreements to which it is a party, and ask judgment for damages which it has sustained by reason of the wrongs done to it and its property. These well settled principles demonstrate the inaccuracy of the rule laid down

by the court by which the jury should measure the damages resulting from the operation of the writ. The suit was brought by the complainants against the Reservoir Company alone. The writ was against it. The bond to support it was a promise to respond to the corporation for whatever damages that artificial being should sustain. By no process of reasoning can the bond be made to include a covenant to protect the stockholders of the corporation from any loss which should fall on them because of the failure of the company to discharge its contracts, unless it should be determined in some legal way that the Reservoir Company was responsible to the contracting parties for the failure to deliver water under some valid undertaking into which it had entered. No such question is presented. The record only raises the naked inquiry whether, when a corporation sues on a bond running to it, it can include in its claim for damages those which have incidentally fallen on its stockholders, without proof that they have been compelled to respond for a breach of some valid contract into which they had antecedently entered, and which they were prevented from performing by the bond in suit, or a showing that they have rightfully liquidated the claims asserted against it. The statement of the query furnishes its own refutation. The corporation was not farming the lands on which the crops were sown that suffered from the failure to deliver the water. They were the property of third persons who were not parties to the action in which the writ issued, and who were not nominated in the bond on which the suit is based. To extend the right to recover to include these losses under such circumstances would surely violate the well founded doctrine that nothing shall be allowed which is not the actual, natural and proximate result of the wrong committed. High on Injunctions, § 1663.

The judgment cannot be modified and permitted to stand. The proofs on the matter of counsel fees and expenses are not so definite as to enable the court to decide what part of the recovery could be legitimately sustained.

For the error committed by the court in instructing the jury on the measure of damages the case must be reversed and remanded.

*Reversed.*